# Catherine B. McVey

1818 Carmel Road

Greensboro, NC 27408

727.773.7424 kmcvey1948@gmail.com


November 13, 2026

FILED BY MP D.C.

NOV 17 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Judge David Leibowitz
Wilkie D. Ferguson, Jr.
United States Courthouse
400 North Miami Ave, Miami, FL 33128

RE: case # 24 CR 20560

Dear Judge Leibowitz:

JUDGE LEIBOWITZ, PLEASE READ THIS LETTER IN ITS ENTIRETY.

I have known Rod Vanderbilt for several years, and throughout much of that time, we have spoken several times a day. As his friend and confidante, I have had extensive conversations with him about his professional responsibilities as chairman of the board of Vinco Ventures.

Our discussions covered the acquisitions of Lomotif and Adrizer, changes in board membership, proxy disputes, attempted takeovers, and the company's ongoing business decisions. Although I was not personally present for every corporate decision, these conversations gave me a close perspective on Rod's understanding of events and his reliance on professional advice.

I respectfully ask the Court to consider the following matters when evaluating Rod's conduct and the circumstances surrounding this case.

Rod's reliance on attorneys and other professionals

Throughout our conversations, Rod consistently described relying on attorneys for guidance concerning acquisitions, voting, corporate strategy, SEC filings, and other board decisions. The firms and attorneys he identified included Greenberg Traurig-Kevin Friedman, DLA Piper-Tom Ara, and, most frequently, securities attorney Jolie Kahn.

Rod's relationship with Ted Farnsworth spanned approximately 31 years and was built on longstanding trust. From my conversations with Rod, I understood

that he relied both on that relationship and on the advice of the professionals involved in the company's affairs.

Public awareness of Ted Farnsworth's involvement

I understand that one of the government's allegations concerns whether Ted Farnsworth's involvement in Vinco Ventures was concealed from the public. I ask the Court to consider the public litigation and broadcasts that may bear on that question.

During the dispute involving John Colucci, Rod, Ted, Lisa King, and Erik Noble were removed from their positions or involvement with Vinco. Litigation followed in Las Vegas, Nevada, before Judge Thomas. The proceedings extended over several months, and hearings were broadcast through BlueJeans. My understanding is that Ted's involvement in the business was openly discussed during those proceedings and that Judge Thomas referred to him as "the most important person in the room."

Ted was also frequently discussed on social media. I believe the court record and other public materials deserve consideration in determining what was publicly known about his role.

The court order concerning Ted's ability to work

Rod told me that a judge in Miami issued a written order permitting Ted to work in any capacity for Vinco Ventures or its subsidiaries despite his indictment in the MoviePass matter. Rod also told me that Jolie Kahn reviewed that order and advised that Ted could continue working for the company.

If those documents and communications support Rod's account, I respectfully ask the Court to consider them when assessing his decision to allow Ted to remain involved.

Preparation and submission of SEC filings

Another significant issue concerns the company's SEC filings. Rod has consistently told me that he did not personally prepare or submit those filings, did not possess EDGAR filing codes, and rarely reviewed the filings themselves. According to Rod, attorneys and chief financial officers handled the filings and used his electronic signature.

I respectfully ask the Court to examine who prepared, reviewed, authorized, and submitted the filings, including how Rod's electronic signature was used and what he knew about their contents.

The investigation and Rod's decision to plead guilty

Rod told me that the matter was initially handled by Catherine McCarthy, then Lauren Archer, and later Matt Reilly. He also told me that he was advised early in the case that Lisa King and others would be indicted within approximately 30 days of his indictment. To my knowledge, those anticipated indictments have not occurred, although approximately three and a half years have passed since the matter began.

I recognize that charging decisions alone do not establish anyone's guilt or innocence. Nevertheless, I hope the Court will examine each person's role and the evidence concerning Rod's individual conduct.

Rod has also expressed to me that fear of going to trial played a substantial role in his decision to accept a plea agreement. I understand that the Court must evaluate the plea and the evidence before it, but I wanted to convey what he shared with me about his state of mind.

Where the company's money went

One of my greatest concerns is whether the financial record clearly establishes where the company's money went and who benefited from its expenditures. I respectfully ask the Court to consider any forensic accounting and the supporting bank records, contracts, emails, and text messages.

Rod has told me that his total compensation from the company was approximately $500,000 and that it was documented and disclosed. He also told me that Ted provided money for two vehicle down payments and a condominium renovation. According to Rod, those payments came from funds whose source and use were documented, disclosed, and approved by attorneys. I ask that the underlying records be examined to establish those facts.

Rod further told me that Ted received a $6 million fee connected with the Adrizer acquisition and that attorneys and bankers guided and approved that payment. The documentation surrounding that fee should help clarify its basis and authorization. The DOJ & SEC have never stated that the $6 million fee paid to Ted was illegal or fraudulent. All five board members voted and approved this fee to be paid to Ted based on attorney approvals and guidance.

The acquisitions and other transactions that affected the company

Based on my conversations with Rod, I believe the financial consequences of the Lomotif and Adrizer acquisitions warrant careful examination.

Rod told me that Vinco paid approximately $108 million for Lomotif and invested another $20 million in the platform. He described substantial technical problems with the app and said its seller personally received approximately $40 million in cash from the transaction.

Rod also told me that Vinco paid approximately $38 million for Adrizer and that its seller, Ken Bond, personally received approximately $20 million in cash. He raised concerns about the accuracy of financial information attributed to Adrizer's CFO, Chris Polemini, and said the business was later understood to be worth approximately $7 million. These are serious concerns, and I respectfully ask that they be evaluated against the transaction records and financial evidence.

Rod also described transfers of millions of dollars overseas during John Colucci's period of control. Separately, he told me that Erik Noble discovered an alleged alteration to a court document presented by temporary CEO Ross Miller in connection with a $300,000 payment to Miller. According to Rod, he approved that payment because he believed the document accurately reflected Judge Thomas's order. Matt Riley is aware of this fraud and theft and did nothing to bring Ross Miller to justice.

I cannot independently establish these allegations, but I believe the relevant records should be reviewed to determine what occurred and how these events affected the company's finances.

Rod's knowledge and intent

Rod has told me that the government has not shown him an email or text message in which he agreed to commit securities fraud. From my extensive conversations with him, I understood him to be attempting to carry out his responsibilities while relying on attorneys, financial professionals, and people he trusted.

I believe the Court should carefully distinguish among unsuccessful acquisitions, poor financial management, misplaced trust, and intentional wrongdoing. My experience with Rod has led me to believe that he did not knowingly set out to deceive investors or defraud the company.

I respectfully ask the Court to consider the full financial record, the professional advice Rod received, the responsibilities of the other individuals involved, and the evidence concerning his personal knowledge and intent. My purpose in writing is to provide the perspective I gained through years of frequent conversations with him and to ask that these circumstances receive careful consideration.

Thank you for taking the time to read this letter in its entirety. Please call me if you have any questions for me.

Respectfully,

Catherine B. McVey (Katie)

Catherine B. McVey (Katie)

LETTER

JUDGE DAVID S. LEIBOWITZ

WILKIE D. FERGUSON JR

UNITED STATES COURTHOUSE

400 NORTH MIAMI AVENUE, MIAMI, FL 33128

Rod's answers to the allegations are in red.

- **Participation in a securities-fraud conspiracy — paragraphs 1 and 12, pages 1 and 5–6.** Identify precisely what agreement prosecutors claim you entered, with whom, and when. Review the communications and conduct they rely on to establish your participation. Rod never entered into any agreements or signed any agreements without the guidance of lawyers, SEC Lawyer Jolie Kahn, Greenberg Traurig Kevin Friendman, DLA Piper Tom Ara
- **Knowing and willful participation — paragraph 12.** Examine what evidence shows you knew about fraud and intentionally joined it. Identify records showing what you actually knew at the time, what information others withheld, and any objections or corrective actions you took.Rod never saw any fraud. In fact during daily board meetings with the first board (Mike DiStasio, Phil McFillin, Lisa King, Elliott Goldstein) and the second board ( John Colucci, Lisa King, Brian Hart, Jesse Law) Rod specifically stated to run everything through lawyers and make sure we are in regulation.
- **Ability to prove guilt beyond a reasonable doubt — paragraph 12.** Have counsel evaluate whether the underlying evidence supports every required element, rather than relying solely on the agreement's blanket admission.The DOJ Kate McCarthy and Lauren Archer, Matt Riley stated two years ago that other Board Members and Bankers would be indicted. NO ONE has been indicted? Why? Because no one did anything wrong. No evidence of fraud or stealing in the company. It was bad money management and bad acquisitions.
- **At least $65 million in losses — paragraph 13(c).** Request the complete calculation, transaction records, assumptions, and expert analysis. Examine whether it includes losses attributable to market conditions, unrelated business events, or other causes.

**Did the DOJ do a forensic accounting on the Vinco? Surely they did? They have every bank statement, email, text message, documents. They have everything. WHERE DID THE MONEY GO? JUDGE LEIBOWITZ, PLEASE ASK MATT RILEY WHERE THE MONEY WENT? IT DID NOT GO TO ROD VANDERBILT OR TED FARNSWORTH. THEY ONLY GOT THEIR FULLY DISCLOSED AND SEC FILED SALARIES. TED RECEIVED A $6 MILLION FEE FOR THE ADRIZER PURCHASE. ALL LAWYERS AND BANKERS TOLD THE BOARD IT WAS LEGAL AND NOT BREAKING**

**ANY LAWS. ALL BOARD MEMBERS VOTED TO APPROVE THIS $6 MILLION TO TED. ROD ONLY RECEIVE HIS SALARY OF APPROX 200K PER YEAR. NO STOCK WAS ISSUED TO ROD AND HE NEVER RECEIVED ANY OTHER MONEY EXCEPT SALARY. TED PAID FOR REMODELING ON THEIR CONDO WITH MONEY THAT HE RECEIVED WAS COMPLETELY APPROVED BY LAWYERS AND BANKERS FOR THE $6 MILLION FEE.**

- **Possible losses above $65 million — paragraph 13(c).** The government expressly reserves the right to argue for a higher amount. Require a specific calculation and supporting evidence for any increase.JUDGE LEIBOWITZ ASK THE DOJ MATT RILEY WHERE THE MONEY WENT? DID ANYONE RECEIVE STOLEN OR NON DISCLOSED MONEY? The answer is NO.

- **Property allegedly derived from criminal proceeds — paragraphs 16–19, pages 6–8.** Request identification of each asset, the tracing evidence, and any proposed forfeiture money judgment. Gather records showing legitimate sources of funds, ownership interests, and acquisition dates.Rod only received his salary from Vinco. There were no shares ever issued to him and none were sold. The luxury cars and homes were all financed to the limits. The Miami condo was remodeled by Ted with funds he received from the Adrizer deal that was guided and approved by lawyers and bankers. The DOJ has all personal bank statements and can see all funds were spent on bills each month.

- **Knowingly joining a securities-fraud conspiracy:** From approximately November 2020 through September 2024, you allegedly knowingly and willfully agreed with Theodore Farnsworth, an unnamed investment bank, an unnamed investment management firm, and others to commit securities fraud. *(¶8, pp. 2–3)This is just not true. Rod never saw anything being done wrong or illegal. The only things he saw wrong was with Ross Miller after the proxy war (hostile takeover attempt by Miller) in which Eric Noble found blatant fraud from Miller who changed a court document from Judge Thomas in Las Vegas. The document change caused Rod to send Ross Miller an additional $300,000. Eric Noble discovered this and told the DOJ about the theft and fraud and the DOJ did nothing. The other incident was John Colucci who initiated the first proxy war (hostile takeover) who filed illegal SEC filings with fraudulent statements. Lawyers review every detail and every move by the Board and Rod.*

- **Participating in securities fraud:** You allegedly participated in deceptive schemes, materially false statements, material omissions, and fraudulent business practices involving Vinco Ventures stock through interstate communications or the mail. *(¶8, pp. 2–3; ¶54, p. 14)ROD NEVER FILED ONE SEC FILING. HE NEVER HAD EDGAR CODES TO FILE REPORTS UNTIL HE AFTER HE LEFT THE TEMPORARY EXECUTIVE CHAIRMAN POSITION. ALL SEC FILINGS WERE WRITTEN BY LAWYERS ALONGSIDE OTHER BOARD MEMBERS. THE SEC FILINGS WERE ALL FILED BY LAWYERS OR CFO'S BRENDON BOSACK OR PHIL JONES.*

- **Artificially inflating the stock price and trading volume:** You and Farnsworth allegedly made materially false or misleading statements about Vinco's strategy, operations, and Farnsworth's role to inflate the stock price and increase trading. *(¶10, p. 3)THIS IS 100% FALSE AND NOT TRUE. ROD NEVER WROTE PRESS RELEASES OR SEC FILINGS. HE MAY HAVE BEEN COPIED ON THE FILINGS BUT MADE NO CHANGES OR WROTE THEM. THEY WERE ALL WRITTEN BY STAFF AND LAWYERS.*
- **Preparing or approving misleading public disclosures:** You allegedly drafted, reviewed, and/or approved misleading press releases and SEC filings intended to reach investors nationwide. *(¶11, p. )THIS IS 100% FALSE AND NOT TRUE. ROD NEVER WROTE PRESS RELEASES OR SEC FILINGS. HE MAY HAVE BEEN COPIED ON THE FILINGS BUT MADE NO CHANGES OR WROTE THEM. THEY WERE ALL WRITTEN BY STAFF AND LAWYERS*
- 
- esponsibilities are factual assertions you can check. *(¶4, pp. 1–2)*
- **Serving as Farnsworth's representative:** Farnsworth allegedly selected you as a Vinco officer/director with the understanding that you would follow his directions, helping conceal his actual control. *(¶9, p. 3; ¶18–19, p. 5)Rod never concealed his role. Ted was running the company alongside 50 other staff members. During the proxy war (hostile takeover) and court hearings in Las Vegas, Judge Thomas stated that Ted Farnsworth was the "most important person in the room." This was broad cast live on Blue Jeans to entire country including all logged in shareholders. Everyone new Teds role in the company.*
- **Knowing about the MoviePass investigation:** You allegedly knew, at the time of the January 2021 merger arrangements, that DOJ and the FBI were investigating Farnsworth concerning HMNY and MoviePass securities fraud. *(¶15, p. 4)Yes, all Board Members knew about MoviePass indictment. COURT DOCUMENTS FROM MIAMI JUDGE SPECIFICALLY STATED THAT TED FARNSWORTH COULD REMAIN AT VINCO IN ANY CAPACITY. The lawyers told the Board he could stay on board. Jolie Kahn Esq reviewed the documents and gave the approval.*
- **Helping conceal Farnsworth's control:** The document describes the reverse triangular merger and appointment of compliant officers and directors as means of concealing Farnsworth's role. *(¶15, p. 4)The reverse merger was completely guided by lawyers. How could Farnsworths role be concealed when he is front and center at the court hearing in Las Vegas being broadcast around the US on Blue Jeans. Also social media outlets constantly spoke of Ted.*
- 
- 
- 

- **Receiving luxury-car access:** Farnsworth allegedly provided you access to luxury automobiles as part of those benefits. *(¶19, p. 5)The luxury cars were financed under Rod not Ted. Ted paid for the down payments with funds from the $6 million fee he earned from the Adrizer deal. That deal and funds were guided and approved by lawyers and bankers. No arrest have occurred with the bankers Hudson Bay and Paladium Capital so it appears NO ONE did anything illegal. Judge Leibowitz – why haven't they indicted the bankers? Because nothing was done illegal and there is NO EVIDENCE.*

- **Using misleading publicity to create those events:** You allegedly helped release materially false information about Vinco and ZASH through press releases, SEC filings, and media appearances. *(¶16, p. 4)Rod never wrote any Press Release or SEC filings. He was copied a couple but never wrote them nor sent them out. The lawyers (Jolie Kahn, Kevin Friedman, Adele Hogan) did those and used Rod's digital signature on them.*

- **Approving convertible-note and warrant transactions:** Your approval of transactions with the investment management firm is alleged to have furthered the conspiracy. *(¶20(a), p. 5) This was done with the guidance of SEC lawyer Jolie Kahn, and CEO Lisa King. Rod approved this transaction ALONG WITH 4 OTHER BOARD MEMBERS. All board members were guided and told the transaction was legal and good.*

- **Making statements to facilitate profitable stock sales:** You allegedly made misleading statements to create favorable selling conditions for the investment management firm. *(¶20(b), p. 5)Show Rod any statement that he made. Where is the proof???*

- **Approving payments benefiting Farnsworth:** You allegedly approved Vinco funds paid directly or indirectly to Farnsworth as salaries, expense reimbursements, fees, commissions, and business loans. *(¶20(c), p. 5)I also approved for others. Was this ILLEGAL? What does this have to do with Conspiracy to Commit Securities Fraud*

**Lomotif user numbers and your alleged knowledge**

- **Learning that user data was unreliable:** After the Lomotif acquisition closed, you allegedly learned that its user metrics were unreliable and materially inflated. *(¶21, pp. 5–6) Yes, all 5 board members and lawyers learned of the same time. Is this a crime. SEC Lawyer Jolie Kahn never told the board we needed to put this in SEC filings. Look at the emails.*

- 

- **December 2021 consultant warning:** A consultant allegedly informed Vinco management that a software glitch double- and triple-counted users, substantially reducing reported user numbers when corrected. This is offered as support for the allegation that you knew about the problem. *(¶22, p. 6)Where is the evidence? The board was told this all at once.*

- **April 2022 consultant findings:** A consultant allegedly sent management a detailed analysis documenting inflated user metrics before the acquisition and historical anomalies in video-view counts. *(¶23, p. 6) Allegedly!! All Board members found out about the issues at the same time alongside the SEC Lawyer Jolie Kahn.*

- **Failing to correct statements and continuing misleading statements:** You and Farnsworth allegedly left the earlier releases uncorrected and continued making materially false or misleading statements about Lomotif. *(¶24, p. 6)Rod never wrote a press release or issued a press release. They were done by SEC lawyer Jolie Kahn and others.*

**Funding problems and transfers of company money**

- **Knowing funding had become insufficient:** The document states that by approximately November 2022, Vinco was running out of money and stopped providing enough funding for Lomotif's full operations. This supports later allegations about your knowledge and disclosures. *(¶25, p. 6)The entire Board of Directors was notified at the same time along with lawyer Jolie Kahn. Jolie never told us to disclose this.*

- **Directing transfers from AdRizer:** In approximately December 2022, you allegedly directed employees to transfer millions of dollars from AdRizer's bank account to Vinco's account to pay board-approved expenses. *(¶26, p. 7)This is true. Legitimate expenses needed to be paid. Is this a crime?*

- **Receiving a Lomotif payroll warning:** In approximately February 2023, Lomotif's CEO allegedly told you that it could not cover March payroll. *(¶27, p. 7) True Is this a crime?*

- **Asking the CEO to fund payroll personally:** You allegedly asked Lomotif's CEO whether he could personally cover approximately $300,000 for payroll and continued operations. *(¶27, p. 7)Is this a crime. He made $40 million personally on Lomotif and thought he could help us.*

- **Receiving repeated AdRizer payroll warnings:** During February and March 2023, AdRizer's CEO and HR manager allegedly repeatedly raised payroll concerns with you and Farnsworth. *(¶28, p. 7)True. The Board of Directors and staff was notified at the same time.*

**April 7, 2023 Form 10-Q**

- **Reviewing, approving, and signing the filing:** You allegedly reviewed, approved, and signed the late-filed report for the quarter ending September 30, 2022. *(¶31, p. 7)Rod never wrote or signed filings. Others used his digital signature on filings. He may have been copied on a few filings but never wrote nor APPROVED them. Jolie Kahn wrote and filed most filings along with Brendon Bosack CFO, Phil Jones CFO.*

- **Misrepresenting ongoing monetization work:** The filing allegedly said Vinco was developing ways to monetize Lomotif, including through AdRizer, even though you knew Lomotif was not developing those capabilities because of insufficient funding. *(¶33–34, p. 8)Rod never wrote nor approved filing. Never made comments on filing. Filing was done by Jolie Kahn and Javan Khazali and Ted Farnsworth. They used Rod's digital signature on filing.*

- **Misleading investors about audience metrics:** The filing discussed audience growth and user measurements without disclosing that Lomotif lacked reliable means of measuring users. *(¶35–36, pp. 8–9)Rod was not involved in this. Lisa King CEO and others were savvy to this.*

- **Misleading investors about expected advertising revenue:** The filing allegedly presented AdRizer advertising revenue through Lomotif as anticipated despite suspended functions and funding problems that, according to the document, prevented that expectation. *(¶35–36, pp. 8–9) )Rod never wrote or signed filings. Others used his digital signature on filings. He may have been copied on a few filings but never wrote nor APPROVED them. Jolie Kahn wrote and filed most filings along with Brendon Bosack CFO, Phil Jones CFO.*

- 

**April 2023 shareholder letters**

- **Receiving an AdRizer executive's warning:** On approximately April 11, AdRizer's CEO allegedly told you he wanted to discuss resigning as a director because of changes to operating funds and bank-account control. The document also records the CFO's April 12 resignation. *(¶37–38, p. 9)Ken Bond CEO of Adrizer LIED ABOUT THE NUMBERS IN ADRIZER. CHRIS POLEMENI CURRENT CFO OF VINCO FOUND THE FRAUD. KEN BOND WANTED THE COMPANY TO FAIL BECAUSE IT INSURED WE WOULD NOT FIND OUT ABOUT THE FRAUD WHICH NETTED HIM $20 MILLION PERSONALLY. HE ALSO BOUGHT THE ADRIZER OFFICE BUILDING THAT VINCO WAS LEASING AND HAD VINCO MONTLY RENT PAYMENTS COMING TO HIS NEWLY FORMED COMPANY WITH THE SIMILAR NAME AS THE FORMER LANDLORD/BUILDING.*

- **Issuing the April 17 shareholder letter:** You allegedly issued a letter, drafted/reviewed/approved by Farnsworth, describing plans to integrate and monetize National Enquirer content through Vinco's businesses. *(¶39, p. 9) Rod never*

*drafted any letter. It was done by SEC lawyer Jolie Kahn, and Javan Khazali. Ted Farnsworth and Lisa King assisted. No proof in emails or text that Rod wrote or filed this. He did not filing Edgar codes at the time. They used his digital signature.*

- **Misrepresenting the feasibility of those plans:** You allegedly knew, but failed to disclose, that Lomotif and AdRizer lacked sufficient funding to operate and therefore could not monetize that content. *(¶40, p. 9)the entire Board of Directors was notified at the same time. The SEC lawyer was in these meetings and never told us we needed to do a filing.*

- **Approving the April 25 shareholder letter:** You and Farnsworth allegedly reviewed and approved the board's second letter, filed on Form 8-K, urging approval of all 12 shareholder proposals and describing future integration and growth plans. *(¶41, p. 10)Yes this is true based on advice from lawyers that is was ok and good.*

- **Concealing continuing operational problems in that letter:** The letter allegedly misleadingly suggested a shift away from "legacy challenges," while you knew funding problems continued and prevented the proposed monetization. *(¶42, p. 10)The letter was Not written by Rod and written by SEC Lawyer Jolie Kahn and Javan Khazali. Along with Lisa King and other board members. Rod was copied and never made any comments. He trusted the lawyers and others.*

**Shutdowns, disclosures, and bankruptcy**

- **Receiving notice of Lomotif's shutdown:** On approximately May 31, 2023, Lomotif's CEO allegedly notified you and others that all operations were shutting down for lack of funding. *(¶44, p. 10)All board members were notified at the same time. Why is Rod the only one indicted?*

- **Vinco's employee furlough:** The document states that Vinco notified all employees of a funding-related furlough on approximately June 16, 2023. This supports its later concealment allegation. *(¶45, p. 10) Nobody was concealing anything. The board was relying on the SEC Lawyer Jolie Kahn to let us know what was proper.*

- **Refusing bankruptcy to further the alleged fraud:** The document alleges that you and Farnsworth refused to file a bankruptcy petition in furtherance of the fraud. *(¶46, p. 11)Rod refused to file bankruptcy because he and the Board Members were trying to save it.*

**Conflicts of interest and related-party disclosures**

- **Concealing Farnsworth's position on both sides of transactions:** You allegedly helped conceal his control of Vinco and his role on both sides of transactions among Vinco, ZASH, and ZVV. *(¶47, p. 11)Kevin Friedman with Greenberg Trarig, Jolie Kahn SEC lawyer handled this transaction and wrote the contracts. Why did the lawyers allow this if it was illegal or fraud????? Was this transaction illegal?*

- **Acting on both sides yourself:** Beginning approximately October 2021, you allegedly acted on both sides of transactions involving those companies. *(¶48, p. 11)What both sides??? Zash and Vinco?? Rod was taken off of ZASH before the transaction with Vinco. This is not true.*

- **Expecting personal benefits for following directions:** You allegedly acted at **December 19, 2022 ZVV/Lomotif transaction**

- **Undisclosed self-dealing:** You and Farnsworth allegedly used control of Vinco, ZASH, and ZVV to undertake transactions for personal benefit. *(¶51, p. 12)What benefit did Rod and Ted receive except their fully disclosed salaries and Ted's $6 million fee for Adrizer that was guided by SEC Lawyer Jolie Kahn, Kevin Friendman with Greenberg Trarig. The lawyers and bankers said the $6 million was legal and within regulatins. The entire Board approved this. Why is Rod the only one indicted????*

- **Entering the purchase at Farnsworth's direction:** The document alleges that the agreement for Vinco to acquire ZASH's ZVV interest was undertaken at Farnsworth's direction and that you signed the announcing Form 8-K. *(¶51, p. 12)Rod never signed any SEC filings. The lawyer Jolie Kahn or others filed and signed Rod's digital signature on filings. Rod never did not have Edgar filing codes at the time and was unable to file anything.*

- **Approving the transaction's consideration:** The document states that Vinco provided ZASH with preferred shares convertible into 144 million common shares and forgave millions of dollars in loans funded through the unnamed investment management firm. *(¶51(a)–(b), pp. 12–13)Every Board Member voted to approve this based on the advice of Lawyers and bankers.*

- **Omitting problems with Lomotif's metrics and funding:** The Form 8-K allegedly failed to disclose unreliable and inflated user metrics and Vinco's significant reduction in Lomotif funding. *(¶52(a), p. 13)These filing were written by SEC Lawyer Jolie Kahn and others. No one ever mentioned this. Rod did not file the filing, approve the filing or make comments on the filing.*

- **Omitting Farnsworth's direction of your actions:** The filing allegedly failed to disclose that Farnsworth directed you to enter the agreement for Vinco. *(¶52(b), p. 13)*

  Rod did not write any filings or file any filings. They were done by SEC Lawyer Jolie kahn and others who determined what content would be in the filing.

D STATES
L SERVICE®

PRIORITY
EX

The UPS Store RFID Label
Tracking #
1Z2E75440373188272

M319-5000

# FLAT RATE ENVELOPE

ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

**VISIT US AT USPS.COM®**

ORDER FREE SUPPLIES ONLINE

PS10001000006

EP13F October 2023
OD: 12 1/2 x 9 1/2

1 LBS 1 OF 1

CATHERINE MCVEY
(727) 773-7424
1818 CARMEL RD
GREENSBORO NC 27408

SHIP TO:
UNITED STATES COURTHOUSE
JUDGE DAVID LEIBOWITZ
400 N MIAMI AVE
MIAMI FL 33128-1801

RECEIVED BY D.C.
NOV 17 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

FL 330 9-03

UPS GROUND
TRACKING #: 1Z 2E7 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 8272

BILLING: P/P

REF #1: 11126
REF #2: FG

GUARANTEED* ▪ TRACKED ▪ INSURED

For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 20 lbs.